**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Bankruptcy Case No. 15-30609** |
| TIMMY WAYNE MITCHELL | § | |
| | § | **Chapter 13** |
| Debtor | § | |
| | § | |
| TIMMY WAYNE MITCHELL | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| (1) PALISADES COLLECTIONS LLC, | § | **Adversary No. _____** |
| | § | |
| (2) VATIV RECOVERY SOLUTIONS, LLC, dba SMC, | § | |
| | § | |
| (3) STEPHEN BRAUN, and | § | |
| | § | |
| (4) ASTA FUNDING, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

      COMES NOW Timmy Wayne Mitchell ("Plaintiff"), and files this adversary proceeding against Palisades Collections, LLC, VATIV Recovery Solutions, LLC, d/b/a SMC, Stephen Braun, and Asta Funding, Inc., ("Defendants"). In support hereof, Plaintiff would respectfully show the Court:

## I. INTRODUCTION

      1.    This is an action brought by Plaintiff regarding Defendants' Proof of Claim No. 5 ("Claim No. 5") filed in Plaintiff's Chapter 13 bankruptcy case and to enforce Debtor's right to recover actual, statutory, and punitive damages, as well as costs and attorney's fees, from the

**PLAINTIFF'S ORIGINAL COMPLAINT**                **Page 1**

Defendants for their violations as set forth herein.

2.      More specifically, this is an action to rectify the abuse by the Defendants of Mr. Mitchell, as well as his legitimate creditors and the Chapter 13 Trustee, resulting from Defendants' filing of the false, improper, and time-barred Claim No. 5 in Plaintiff's Chapter 13 bankruptcy case.

3.      Defendants are using the Bankruptcy Code (the "Code") and Federal Rules of Bankruptcy Procedure (the "Rules") as cover to do that which Defendants could not otherwise do in any other forum or under any other law:  collect time-barred debts using a legal process to extract payment.  This willful and unapologetic abuse of the Bankruptcy Code and Rules, and of those who attempt to participate in and administer the bankruptcy cases filed pursuant to the Bankruptcy Code and Rules, is a drain on the entire Bankruptcy process.  These claims benefit only the undeserving Defendants and actively harm Plaintiff and Plaintiff's good faith creditors who file valid, legally enforceable claims.

4.      Claims like Claim No. 5 are a blight on the administration of the Bankruptcy Code; they are totally incompatible with any honest notion of justice as it pertains to our nation's bankruptcy laws.  At best, they represent an outrageous effort by the debt collection industry to expand the scope of what it means for an obligation to be enforceable against a person using the Bankruptcy Code.  Neither common sense nor Congressional intent supports such a view.

5.      Nothing in the Bankruptcy Code authorizes, much less requires, any entity to file proofs of claim for legally unenforceable debts.  See, *Johnson v. Midland Funding, LLC,* No. 15-11240 (11th Cir. May 24, 2016) (Panel includes Judge Patrick Higginbotham of the 5th Circuit, sitting by designation). Rather, well-established Supreme Court authority confirms that the meaning of the term "claim" in the context of a bankruptcy case is a legally enforceable

obligation, *Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998), and time barred claims are not legally enforceable in a court of law. *Crawford v LVNV Funding, LLC*, 758 F.3d 1254, 1251 (11th Cir. 2014).

6.       Plaintiff is informed and believes that Defendants' Claim No. 5 was not filed by accident:  Defendants *knew* that their Claim No. 5 filed in Plaintiff's bankruptcy sought to recover a legally unenforceable, out-of-statute debt through Plaintiff's Chapter 13 bankruptcy plan payments.

7.       Plaintiff alleges further, upon information and belief, that Defendants acquired the expired debt that forms the basis for Claim No. 5 after the prescriptive period had already expired, along with hundreds, possibly thousands of other debts in the same package of defaulted debts that were also barred by the prescriptive period, and that all or substantially all of the debts that form the basis for any of Defendants' claims filed in bankruptcy cases during the one-year period ending May 4, 2015 were also acquired by Defendants in connection with its purchase of pools of debt Defendants knew included legally unenforceable debts barred by the applicable prescriptive period.

8.       Accordingly, Plaintiff is informed and believes and therefore alleges that not only was the Defendants' filing of Claim No. 5 not an accident, it was a profitable and intentional part of Defendants' *business model*.

## II. <u>PARTIES</u>

9.       Plaintiff is a debtor under Chapter 13 of Title 11 of the United States Code in case number 15-30609, which is presently pending before this Court.

10.     Defendant Palisades Collections, L.L.C. ("Palisades Collections") is a limited liability company and a subsidiary of Asta Funding, Inc., engaged in the acquisition,

management and liquidation of defaulted debt (commonly referred to as a debt buyer) and operates a nationwide delinquent debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of Louisiana, and may be served through its registered agent, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

11.     Palisades Collections is registered with the Louisiana Secretary of State as a collection agency (Charter Number 362657261) with the mailing address of 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

12.     Palisades Collections is a consumer debt collector as defined under 15 U.S.C. § 1692a of the FDCPA.

13.     Defendant VATIV Recovery Solutions, LLC, dba SMC ("VATIV") is a foreign limited liability company and is in the business of nationwide consumer debt collection with its main focus on bankruptcy accounts. VATIV may be served through its Manager, Gary Stern, 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

14.     VATIV is a consumer debt collector as defined under 15 U.S.C. § 1692a of the FDCPA.

15.     Defendant Stephen Braun ("Braun" or "Mr. Braun") is a natural person residing in the State of New Jersey and, upon information and belief, is an employee of VATIV and/or Asta Funding, Inc.  Mr. Braun signed the proof of claim at issue in this case on behalf of "VATIV Recovery Solutions, LLC, dba SMC".  Mr. Braun may be served at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

16.     Defendant Asta Funding, Inc. ("Asta Funding") is a foreign corporation engaged in the acquisition, management and liquidation of performing and non-conforming consumer

debts (commonly referred to as a debt buyer) and may be served through its President and CEO, Gary Stern, 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

17.     Asta Funding is a consumer debt collector as defined under 15 U.S.C. § 1692a of the FDCPA.

18.     Asta Funding's purchase of VATIV gave Asta Funding "the opportunity to enter new markets for acquisitions in the bankruptcy and deceased account fields" and "enhance[d] Asta's position in light of the new Bankruptcy Reform Act of 2005." *See* http://www.insidearm.com/daily/debt-collection-news/accounts-receivables-management/asta-funding-announces-acquisition-of-vativ-recovery-solutions-llc/

19.     Asta Funding (Nasdaq: ASFI) has been in the business of buying debt for over 40 years and purchased approximately $10 billion in receivable balances in the past five years. "With net worth in excess of $100 million, and total financial resources well above that amount, Asta Funding has the wherewithal to purchase any debt portfolio, no matter how large." *See* http://www.astafunding.com/acquisitions.cfm.

### III.  JURISDICTION AND VENUE

20.     This is a core proceeding as defined by 28 U.S.C. § 157, and this is a matter arising in a case under Title 11.

21.     This Court has proper subject matter jurisdiction pursuant to 28 U.S.C. § 157(b) and § 1334.

22.     Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

23.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

24.     Pursuant to Fed. R. Bankr. P. 7008(a), Plaintiff states that to the extent the Court

determines that any portion of this complaint is non-core, Plaintiff consents to the entry of final orders or judgment in this adversary proceeding by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution. Further, to the extent that any court determines that the Bankruptcy Court does not have the authority to enter a final judgment on any cause of action set forth herein, Plaintiff requests that the Bankruptcy Court issue a report and recommendation for a judgment to the United States District Court for the Western District of Louisiana on any such cause of action.

25.     This court has personal jurisdiction over the nonresident Defendants pursuant to Fed. R. Bankr. P. 7004(f).

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claim occurred in this district, Plaintiff filed for bankruptcy protection in this district, and Defendants regularly transact business in this district.

## IV.  FACTUAL ALLEGATIONS

27.     Plaintiff filed his petition for Chapter 13 bankruptcy relief on May 4, 2015, initiating Case No. 15-30609 in the United States Bankruptcy Court for the Western District of Louisiana, Monroe Division.

28.     On June 11, 2015, Defendants filed unsecured Proof of Claim No. 5 ("Claim No. 5") in the amount of $891.62, signed on behalf of Palisades Collections by Defendant Braun as VATIV's authorized agent. The claim included a notice address for VATIV of P.O. Box 40728, Houston, Texas 77240-0728.  Claim No. 5 is attached hereto as **Exhibit A**.

29.     Upon information and belief, Defendant Braun is, and was at the time Claim No. 5 was filed, Assistant Vice President of Operations/Director of Litigation of VATIV and or its

parent company, Asta Funding.

30. Upon information and belief, the notice address listed in Claim No. 5 is an address maintained by Palisades Collections and other subsidiaries of Asta Funding.

31. Claim No. 5 fails to state a charge off date, but states the *date assigned to Palisades Collections* as *August 22, 2006.*

32. Upon information and belief, Claim No. 5 appears to be based on a deficiency balance remaining with HSBC Credit Service, Inc.

33. Plaintiff can recall receiving no deficiency notice or other debt collection communication regarding the subject debt, nor has Plaintiff attempted to make payment on the debt more than three years prior to filing his current bankruptcy. This is why Plaintiff's bankruptcy schedules show no debt was owed to any of the Defendants in this case with respect to the amount claimed in Claim No. 5.

34. Thus, in any event, the debt that is the subject of Claim No. 5 is a delinquent debt older than three years and outside of the applicable prescriptive period. As such, the debt that is the subject of Defendants' Claim No. 5 is not legally enforceable under Louisiana law.

35. In addition to filing a claim on an out-of-statute debt, Defendants used false, deceptive and misleading representations and means in their attempt to collect the debt through the proof of claim.

36. The first page of Claim No. 5 states that the "Name of the Creditor" is "Palisades Collections, LLC". However, the fourth page of the claim, "Screen Data," states the "*Client*" as "Palisades Collections/Asta Funding" "assigned to Palisades Collections, L.L.C." The "Screen Data fails to name the "Orig. Creditor," but identifies the "Portfolio" as "ALLTER." The claim fails to provide the documents required by Fed. R. Bankr. P. 3001(c), which, for purposes of a

debt buyer, would include a copy of the original contract signed by the borrower and the legal documents transferring ownership of the debt from the original creditor to the first debt buyer and to every debt buyer up to the entity filing the proof of claim in this bankruptcy case.

37.     The claim fails to attach the original or a copy of the original contract signed by Mr. Mitchell.

38.     Defendants filed a false and misleading claim.  The claim with its attachments is misleading in that it purports to attach valid documents to lead the Chapter 13 Trustee, the Debtor, and the Court to believe that Defendants have a valid, legally enforceable claim against the Debtor that they could enforce in a Louisiana state court, when in fact, Defendants do not have the documents establishing that Plaintiff owed the debt, or the required chain of title, and the prescriptive period was expired.

39.     On the day that Plaintiff filed for bankruptcy, Defendants could not lawfully sue Plaintiff to collect the debt that is the subject of Defendants' Claim No. 5.

40.     On the day that Plaintiff filed for bankruptcy, Defendants could not employ any legal process to compel Plaintiff to make payment on the debt that is the subject of Defendants' Claim No. 5.

41.     Defendants knew or should have known at the time they filed Claim No. 5 that the prescriptive period in Louisiana for collection of debts of the type that is the subject of Defendants' Claim No. 5 is three years.

42.     Defendants knew at the time they filed Claim No. 5 that more than three years had elapsed since the original creditor "charged off" Plaintiff's account.

43.     Upon information and belief, Defendants are motivated by the possibility that a Chapter 13 bankruptcy debtor's voluntary payment on a debt after the expiration of the

prescriptive period in Louisiana could be found to re-set the otherwise expired prescriptive period, *i.e.* the three-year prescriptive period in Louisiana arguably begins to run anew after any such payment.

44.     Asta Funding is a sophisticated institutional creditor whose business model involves generation of revenue through its bankruptcy trustee payments on the proofs of claim, like Claim No. 5, that its subsidiaries file in consumer debtors' Chapter 13 bankruptcy cases.

45.     Palisades Collections is a sophisticated institutional creditor and debt collector whose business model involves generation of revenue through its bankruptcy trustee payments on the proofs of claim, like Claim No. 5, that it files in consumer debtors' Chapter 13 bankruptcy cases.

46.     VATIV is a sophisticated institutional creditor and debt collector whose business model targets bankruptcy accounts and involves generation of revenue through bankruptcy trustee payments on the proofs of claim, like Claim No. 5, that it files in consumer debtors' Chapter 13 bankruptcy cases.

47.     Upon information and belief, Defendants Asta Funding, Palisades Collections, and VATIV knowingly purchase portfolios of defaulted debts that include debts that are legally unenforceable due to the expiration of the prescriptive period applicable to such debts.

48.     Upon information and belief, Plaintiff's debt that is the subject of Defendants' Claim No. 5 was acquired by Asta Funding or Palisades Collections as part of a portfolio containing numerous other time-barred debts (i.e. the applicable prescriptive period had expired for such debts).

49.     Upon information and belief, Asta Funding or Palisades Collections negotiated the price of the portfolio of defaulted debts that included Plaintiff's debt that is the basis for

Defendants' Claim No. 5 based specifically on, amongst other factors, the percentage of such portfolio Defendants anticipated they would recover through Chapter 13 Trustee payments.

50.     Upon information and belief, Asta Funding or Palisades Collections negotiated the price of the portfolio of defaulted debts that included Plaintiff's debt that is the basis for Claim No. 5 based specifically on, amongst other factors, the belief that Chapter 13 Trustee distributions on such debts would result in the prescriptive period re-setting such that the debts for which Chapter 13 Trustee payments were received would thereby become legally enforceable again if Plaintiff's Chapter 13 case were to be dismissed.

51.     Defendants' filing of claims in bankruptcy such as Claim No. 5, *i.e.* claims based upon legally unenforceable obligations, has the potential effect of diminishing the amount and/or rate of distribution under Plaintiff's Chapter 13 Plan that creditors with legally enforceable obligations would otherwise receive.

52.     At the time that Defendants filed Claim No. 5, Defendants knew that their claim would be disallowed if the Plaintiff or another party-in-interest were to object to it on the basis that it is not legally enforceable due to the expiration of the prescriptive period.

53.     At the time that Defendants filed Claim No. 5, Defendants knew that the Chapter 13 Trustee in this district does not object to unsecured claims on the basis that they are unenforceable against the debtors due to the expiration of the prescriptive period.  This is not because the Trustee agrees that these are valid claims.  Rather, the Trustee simply lacks the resources necessary to review each and every proof of claim filed in every Chapter 13 case.

54.     At the time that Defendants filed Claim No. 5, Defendants knew that more often than not, debtors' counsel in this district fail to object to unsecured claims on the basis that such claims are barred by the prescriptive period.  Like the Trustee, this is not because debtors'

16-03024 - #1  File 07/11/16  Enter 07/11/16 18:54:54  Main Document   Pg 10 of 23

counsel agrees that time-barred claims like Claim No. 5 are valid. Rather, the economics of a typical volume-based consumer bankruptcy practice make careful review and objection to claims difficult to justify in the vast majority of cases.

55.    Indeed, Defendants' entire business model with respect to proofs of claim for time-barred debts like the debt that is the subject of Claim No. 5 is effectively a business-model that relies on the inertia of the claims allowance process in Chapter 13 bankruptcy to allow it (a) to obtain payment on an otherwise legally unenforceable debt during the debtors' bankruptcies, and (b) potentially revive the legal enforceability of such debt and also renew the applicable prescriptive period for such debt in the statistically likely event that the Chapter 13 debtors' bankruptcies are dismissed.[1]

56.    Upon information and belief, at the time that Defendants filed Claim No. 5, Defendants' only knowledge regarding the dates, amounts, and alleged basis for Claim No. 5 was derived from an electronic spreadsheet Defendants obtained from a third party, which third party was not the originator of such debt.

57.    Upon information and belief, at the time that Defendants filed Claim No. 5, they were not in possession of any physical documents or electronic file(s) containing original contract or final accounting documents and chain of title documents that would allow them to establish the validity of the debt that is the basis for Claim No. 5.

58.    Thus, by filing Claim No. 5, Defendants were simply betting that they would receive some distribution on Claim No. 5 because nobody would bother to object to their claim.

59.    Simply put, it is Defendants' business model to keep filing claims like Claim No.

---

[1] *See* Federal Trade Commission, The Structure and Practice of the Debt Buying Industry (2013), p. 47 and n. 195, *available at* https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf., and also attached hereto as **Exhibit B**.

5 until they get caught.

60.     Defendants have no policy against filing proofs of claim, such as Claim No. 5, which are not legally enforceable against debtors in bankruptcy due to the expiration of the applicable prescriptive period.

61.     Claim No. 5 filed by Defendants is time-barred and therefore objectionable under 11 U.S.C. § 502(b)(1), and it is therefore due to be disallowed.

62.     In addition, the filing of claims seeking payments on time-barred debts violates the FDCPA and the Court should provide the Plaintiff his statutory damages, actual damages, and attorneys' fees and costs pursuant to the FDCPA.

63.     Plaintiff asserts that the Court should also impose sanctions against Defendants for their abuse of process in filing Claim No. 5 seeking to recover legally unenforceable obligations from Plaintiff and his bankruptcy estate, as well as award Plaintiff's actual and statutory damages and reasonable attorneys' fees and costs.

## V.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### OBJECTION TO CLAIM

64.     Plaintiff repeats and realleges the preceding paragraphs.

65.     The Plaintiff objects to Defendants' Claim No. 5 on the grounds that it is time-barred and non-collectable.

66.     Louisiana Civil Code (La. C.C. art. 3494) provides for a three (3) year prescriptive period applicable to the underlying debt made the subject of each claim.

67.     Claim No. 5 is time-barred.

68.     The subject debt was charged off more than 3 years ago, as evidenced by the information contained in Claim No. 5, showing an "assigned to" date of August 22, 2006.

69.     Plaintiff has incurred actual damages and attorneys' fees as a result of Defendants' filing of Claim No. 5.

70.     Pursuant to 11 U.S.C. § 502(b)(1), and Fed. R. Bankr. P. 3007, Plaintiff objects to Claim No. 5 on the basis that it seeks to recover a time-barred debt that is unenforceable against the Plaintiff under Louisiana Law.

71.     Accordingly, Plaintiff requests that the Court enter an order in favor of Plaintiff in this adversary proceeding and enter a separate order in Plaintiff's Chapter 13 bankruptcy proceeding, 15-30609, specifically disallowing Claim No. 5.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

72.     Plaintiff repeats and realleges the preceding paragraphs.

73.     Louisiana Civil Code (La. C.C. art. 3494) provides for a three (3) year prescriptive period applicable to the underlying debt that is the subject of Claim No. 5.

74.     In the Fifth Circuit, as in most jurisdictions, litigation conduct can violate the FDCPA, including filing suit to collect a time-barred debt.[2]

75.     Plaintiff is a "consumer" for purpose of the FDCPA.  15 U.S.C. § 1692a(3).

76.     Each Defendant is a "debt collector" for purpose of the FDCPA. 15 U.S.C. § 1692a(6). Defendants Asta Funding, Palisades Collections, and VATIV are in the business of purchasing and collecting consumer debts nationwide, and were not the original lender associated with Plaintiff's obligation that is the subject of Claim No. 5.  Upon information and belief, Defendant Braun is an assistant vice president of operations/director of litigation of Asta Funding, Palisades Collections, and VATIV, and regularly collects debts on behalf of Defendants from consumers in bankruptcy as a function of his employment by preparing,

---

[2] *See Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir. 2011).

executing, and filing proofs of claim of Asta Funding, Palisades Collections and VATIV.

77.     The debt that is the subject of Claim No. 5 is a deficiency balance with HSBC Credit Service Inc., and as such constitutes consumer debt for purposes of the FDCPA.

78.     By filing Claim No. 5, Defendants are attempting to collect a consumer debt from the Plaintiff.

79.     The FDCPA creates an express private right of action for consumer debtors who are subjected to "false, deceptive, or misleading" communications[3] in connection with the collection of a consumer debt[4], *by a debt collector*[5], as well as for those consumers who experience unfair or unconscionable debt collection tactics[6] employed *by debt collectors* against them (amongst many other forms of debt collection-related conduct prohibited by the FDCPA).

80.     A majority of the federal circuit and district courts that have addressed the issue, have uniformly held that *debt collectors* who file lawsuits in order to collect out-of-statute consumer debts (i.e. filing suit after the prescriptive period has run) violate the FDCPA.[7] Thus, *a debt collector's* use of any type of legal process to obtain payment of a consumer debt that is otherwise legally unenforceable violates the FDCPA.

---

[3] *See, e.g.,* 15 U.S.C. § 1692e.

[4] 15 U.S.C. § 1692a(5) defines consumer "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.*

[5] 15 U.S.C. § 1692a(6) defines "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts …" *Id.*

[6] 15 U.S.C. § 1692f.

[7] *See, e.g., Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014); *Castro v. Collecto, Inc.,* 634 F.3d 779, 783 (5th Cir. 2011); *Huertas v. Galaxy Asset Mgmt.,* 641 F.3d 28, 32–33 (3rd Cir. 2011); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013); *Feyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 771 (8th Cir. 2001); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 947-49 (9th Cir. 2011); *Jenkins v. Gen. Collection Co.,* 538 F.Supp.2d 1165, 1172 (D. Neb. 2008); *See also, In re Trevino*, 535 B.R. 110, 137 (Bankr. S.D. Tex. 2015).

81.     Courts in the Southern District of Texas have repeatedly confirmed that the Bankruptcy Code does not preclude enforcement of the FDCPA[8], including specifically with respect to proofs of claim.

82.     The FDCPA's broad remedial scheme was enacted to protect consumers from unscrupulous debt collectors who would use false, deceptive, or misleading and/or unfair and unconscionable tactics to collect debts from consumers.  Thus, the FDCPA is the *perfect* legal mechanism for solving the problems that arise when sophisticated debt collectors file proofs of claim seeking to recover on stale debts when they know (or should know) better than to use bankruptcy claims as a means to collect otherwise legally unenforceable, out-of-statute debt.

83.     With the FDCPA's modest statutorily-prescribed remedies of actual damages, attorney fees, and up to $1,000 in statutory damages, the FDCPA provides an appropriate, yet limited[9] incentive to debtors and their counsel to police these practices, while also presenting a meaningful disincentive to those sophisticated debt collectors who would improperly dilute the bankruptcy claims process with claims for time-barred debts.

84.     The alternative, *e.g.* limiting consumer debtors' remedies against these unscrupulous debt collectors to mere claim disallowance under § 502 of the Code, forces debtors and their counsel, as well as Chapter 7 and 13 trustees, to engage in a never-ending, resource-draining game of stale debt proof of claim whack-a-mole.  This Court should not reward unscrupulous and sophisticated debt collectors' abuse of the bankruptcy process, and the bankrupt debtor Plaintiff certainly does not deserve to incur attorneys' fees and to have to spend

---

[8] *See, Trevino v. US Bank Trust, N.A. (In re Trevino)*, 535 B.R. 110, 136-139 (Bankr. S.D. Tex. 2015) (proofs of claim and 3002.1 claims); *Lopez v. Portfolio Recovery Associates, LLC. (In Re Lopez)*, 2015 WL 1207012, 5-8 (Bankr. S.D. Tex. 2015)(telephone calls).

[9] Critically, the FDCPA applies only to debt collectors (like Defendants).  The FDCPA is specifically inapplicable to original creditors and entities collecting on debts that such entities acquired by servicing prior to default. Thus, the universe of potential FDCPA defendants is limited to entities whose existence depends on knowing and complying with debt collector laws.

his valuable time and energy seeking disallowance of objectively unenforceable claims like Claim No. 5.

85.     The acts of the Defendants in attempting to collect the time-barred debt in Claim No. 5 violate the Fair Debt Collections Practices Act at 15 USC §§ 1692d, 1692e, and 1692f.

86.     Defendants' Claim No. 5 is false, deceptive, or misleading and in violation of § 1692e of the FDCPA because a claim is a "right to payment," and the Supreme Court has defined "right to payment" as a legally "enforceable" obligation.   Time-barred debts are *not* legally enforceable.  Defendants are thus asserting a "right to payment" when they know that *no* "right to payment" exists.   That is a direct misrepresentation of the character and legal status of the debt.

87.     Furthermore, Claim No. 5 is false, deceptive, or misleading in violation of § 1692e of the FDCPA because when Defendants file a proof of claim, they are necessarily invoking the background presumption that all claims are prima facie valid—despite knowing that these claims are indisputably *invalid*.  That is false (and, at a minimum, highly misleading), and it alone violates the FDCPA.

88.     As set forth in paragraphs 31-39 above, the claim itself contains false and misleading statements, and the claim as whole, with the attachments, is misleading and is a misleading means of collecting a debt in violation of 15 USC § 1692e and § 1692e(10).

89.     Defendants' Claim No. 5 also violates § 1692f's prohibitions against the use of unfair or unconscionable *means* to collect the debt, which Defendants knew to be legally unenforceable at the time they filed Claim No. 5.

90.     Defendants' scheme will only succeed when the system breaks down and fails. Their claims will be rejected 100% of the time when the system operates as Congress intended.

Defendants are accordingly taking advantage of known deficiencies and unintended (but predictable) limitations in the claims process in bankruptcy. Defendants collect on claims like Claim No. 5 only when the system malfunctions. Thus Defendants' means to collect a debt abuses the claims-allowance process in bankruptcy and takes unfair advantage of other innocent participants (legitimate creditors, trustees, the courts, and vulnerable debtors). This attempt to frustrate Congress' design is plainly an unfair and unconscionable means to collect or attempt to collect a debt within the broad scope of § 1692f.

91.     Defendants' filing of Claim No. 5 also violates § 1692d of the FDCPA, which prohibits conduct, the natural consequences of which is to harass, oppress, or abuse the average person.

92.     Plaintiff was harassed, oppressed, and/or abused in violation of § 1692d by the Defendants' filing of Claim No. 5 in that Defendants' filing of such claim required Plaintiff to take action to ensure its disallowance or withdrawal in order to avoid having to make payment on such debt, and to prevent such debt from being deemed valid and enforceable with a re-set prescriptive period by virtue of payment on Claim No. 5 by the Chapter 13 Trustee pursuant to Plaintiff's Chapter 13 plan.

93.     Defendants' filing of Claim No. 5 also violates § 1692d(1) of the FDCPA because it constitutes the filing of a fraudulent claim for which Defendants may be subject to a penalty of up to $500,000, or imprisonment, or both. 18 U.S.C. §§ 152 and 3571.

94.     The official instructions for Official Form 10, the proof of claim form on which Claim No. 5 was filed, provide at paragraph 8:

> "The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct

to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirement of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name and individual filing the claim and the name of the agent. If the authorized agent is a service, identify the corporate services as the company. Criminal penalties apply for making a false statement on a proof of claim."

95.     The Defendants' purpose in filing Claim No. 5 is to use it as a means to harm the Plaintiff and/or his property by using a legal process to collect on a legally unenforceable obligation.

96.     The Defendants' actions in filing Claim No. 5 have damaged Plaintiff.

97.     The Defendants have damaged Plaintiff in that Plaintiff has incurred nominal damages, including mileage expenses, as well as attorneys' fees and costs, for seeking to remedy Defendants' unlawful conduct in filing Claim No. 5. Plaintiff will continue to incur actual damages and attorneys' fees and costs as the case continues.

98.     As a result of Defendants' violations of the FDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, costs of the action, and reasonable attorneys' fees as determined by the Court pursuant to 15 U.S.C. § 1692k.

## THIRD CLAIM FOR RELIEF
## ABUSE OF PROCESS

99.     Plaintiff repeats and realleges the preceding paragraphs.

100.    Claim objections are a drag on the bankruptcy administration process, which is geared toward speed and efficiency and which presumes that only claims based on legally enforceable obligations are to be filed and that such claims are to be allowed as filed.

101.    Most bankrupt consumer debtors (by definition) have very little in the way of means and thus their counsel, who themselves are often working on a flat-rate and volume-based economic model, typically have little incentive to police improper claims through the Bankruptcy Code and Rules' provisions for claim objections.

102.    Indeed, aside from pursuing separate full-blown sanctions proceedings against debt collectors who knowingly file these claims to game the system, the debt buyers argue that the Bankruptcy Code and Rules offer only disallowance of these time-barred claims as a remedy, leaving the debtors (and/or their counsel) to bear the costs of prosecuting such objections.

103.    Similarly, most Chapter 7 and 13 Trustees, despite having a statutory obligation to object to proofs of claim "if a purpose would be served,"[10] rarely, if ever, actually object to time-barred proofs of claim.

104.    The upshot, given the absence of any provision in the Code or Rules automatically shifting the expense of the objection to the debt collectors who file legally unenforceable claims, is that debt collectors, armed with massive portfolios of out-of-statute debts, are creating a loophole, via the Bankruptcy Code, which allows them to enforce otherwise legally unenforceable claims against bankrupt consumer debtors.

105.    While it is true that the Code contemplates that a variety of types of claims may be entitled to a distribution in bankruptcy, including contingent and unliquidated claims, nowhere does the Code provide for the resurrection of otherwise legally unenforceable debts. Nor are the debtors' creditors who hold unexpired, valid, and legally enforceable claims in any way benefitted by these stale-debt debt collectors sharing in the distributions of the Plaintiff's bankruptcy estate.  Thus, the only benefit that results from the filing of proofs of claim for time-barred debts redounds to the debt collectors who would otherwise be legally powerless to recover

---

[10] *See* 11 U.S.C § 704(a)(5), 1302 (b)(1).

anything on these debts outside of bankruptcy.

106. Defendants directed and caused the filing of Claim No. 5 that contained allegations that were false, fraudulent, undocumented and/or misleading concerning the Plaintiff's obligations in this case.

107. Defendants filed Claim No. 5 in an attempt to obtain money from the Plaintiff on a stale debt. Such conduct has created unnecessary delay and expense in the administration of this bankruptcy case.

108. By its conduct and practices, Defendants have acted in bad faith such that the Federal Rules of Bankruptcy Procedure are not up to the task of adequately sanctioning Defendants for their conduct. Defendants' conduct and practices are therefore sanctionable under the Court's inherent powers and under 11 U.S.C. § 105(a).

109. For a number of years, Defendants have engaged in a common course of conduct to ignore the mandates of the Code by systematically filing false, misleading, out-of-statute, and undocumented proofs of claim. Defendants purposely do not have policies and procedures in place to file accurate, documented, and legally enforceable claims. Even after objections are filed, Defendants frequently withdraw their claims, thus admitting that they never should have been filed in the first place. As described herein, all such actions are in direct violation of the Code and Rules and constitute an abuse of process.

110. Defendants have been operating under the assumption that their proofs of claim in consumer cases are invulnerable to challenge because debtors lack the sophistication, the debtors' bar lacks the financial motivation, and the bankruptcy courts and trustees lack the time and resources to call them to task on their false, undocumented, stale, and otherwise deficient proofs of claim that they file for debts that are legally unenforceable in any jurisdiction in the

country. *See, e.g., In re Prevo*, 394 B.R. 847, 848-49 (Bankr. S.D. Tex. 2008).

111. Although debtors bear the initial burden of raising objections to claims, creditors must comply with the requirements of Rule 3001 of the Federal Rules of Bankruptcy Procedure for filing a proof of claim by providing the account information and attaching supporting documents in the first instance as Rule 3001(c)(1) and (2) require. *See Prevo*, 394 B.R. at 850.

112. Defendants did not attach the contract by which the debt was created. Defendants also did not attach a complete, legal chain of title, which are the writings on which the claim is based.

113. The Defendants' actions in filing Claim No. 5 have damaged Plaintiff.

114. The Defendants have damaged Plaintiff in that Plaintiff has incurred nominal damages, including mileage expenses, as well as attorneys' fees and costs, for seeking to remedy Defendants' unlawful conduct in filing Claim No. 5. Plaintiff will continue to incur actual damages and attorneys' fees and costs as the case continues.

115. Plaintiff asks the Court to find Defendants in contempt pursuant to its inherent powers and 11 U.S.C § 105(a) due to their repeated wrongful actions. Based upon such findings, Plaintiff seeks an award of actual damages, statutory damages, punitive sanctions, attorneys' fees, and costs.

### FOURTH CLAIM FOR RELIEF
### ATTORNEYS' FEES

116. Plaintiff repeats and realleges the preceding paragraphs.

117. Through the conduct described herein, Defendants have inflicted actual damages upon Plaintiff.

118. Plaintiff has incurred nominal damages, including mileage expenses, in seeking to remedy Defendants' actions in filing Claim No. 5.

**PLAINTIFF'S ORIGINAL COMPLAINT**

119. Moreover, Plaintiff has been forced to retain legal counsel, who have incurred reasonable and necessary attorneys' fees on his behalf. Plaintiff will continue to incur attorneys' fees and costs as the case continues.

120. Such fees are properly taxed against Defendants by virtue of Defendants' flagrant violations of the Chapter 13 provisions of the Code, the Federal Rules of Bankruptcy Procedure, and the FDCPA. The Court can award Plaintiff his attorneys' fees as against Defendants pursuant to 15 U.S.C. § 1692k, as well as pursuant to the Court's inherent powers and its § 105(a) powers.

## VI. **PRAYER**

**WHEREFORE,** the Plaintiff, having set forth his claims for relief against the Defendants, respectfully prays of the Court as follows:

1. That the Court disallow Claim No. 5;

2. That the Court awards actual damages, punitive/exemplary damages, sanctions, statutory damages, and reasonable attorney's fees, along with the costs of this action, as determined by the Court; and

3. That the Plaintiff have such other and further relief as the Court may deem just and proper.

This the 13th day of June, 2016.

Respectfully submitted,

/s/ E. Orum Young III
E. Orum Young, Jr., La Bar. 13749
E. Orum Young III, La Bar. 36099
Joseph R. Moore, La Bar. 33996
200 Washington Street
Monroe, Louisiana 71201
(318) 322-6232

Attorney for Debtor.

*/s/ Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ("Thad")
Texas Bar No. 24062602
Southern District Bar No. 3571898
Karen L. Kellett
Texas Bar No. 11199520
Southern District Bar No. 26490
Caitlyn N. Wells
Texas Bar No. 24070635
Southern District Bar No. 2043070
Megan F. Clontz
Texas Bar No. 24069703
Southern District Bar No. 2191929
11300 N. Central Expy., Suite 301
Dallas, Texas 75243
Tel: (214) 696-9000
Fax: (214) 696-9001 (fax)
thad@kblawtx.com

Proposed Attorney for Debtor.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                      **Page 23**